671 A.2d 509

**ENTERPRISE LEASING COMPANY**

v.

**ALLSTATE INSURANCE COMPANY.**

**No. 33, Sept. Term, 1995.**

Court of Appeals of Maryland.

Feb. 12, 1996.

542

Stephen E. Marshall (Goodell, DeVries, Leech & Gray, on brief) Baltimore, for Appellant.

John R. Greene (Cohen, Bennett & Greene, P.A., on brief) Annapolis, for Appellee.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

RAKER, Judge.

■ The dispute in this case is between Enterprise Leasing Company, a self-insured lessor of motor vehicles, and Allstate Insurance Company, the automobile liability insurer of a les-

see, over who must provide primary liability coverage for a third party claim arising out of an automobile accident involving the leased Enterprise vehicle. The precise issue is whether the lessor of a motor vehicle is relieved of financial responsibility for third party claims resulting from the negligent operation of its rental vehicle by a permittee[1] when the vehicle's operation is in violation of the express terms of the rental agreement. We shall hold that the required security mandated by Maryland Code (1977, 1992 Repl.Vol., 1995 Supp.) § 18–102 of the Transportation Article[2] covers operators of leased vehicles driving these vehicles with the permission of the lessee even when the lessee violated the terms of the rental agreement.

Title 17 of the Maryland statutory insurance scheme requires every owner of a registered motor vehicle to maintain liability coverage for personal injury of $20,000 for any one person, $40,000 for any accident, and § 10,000 for property damage. § 17–103(b); *National Grange Mut. Ins. v. Pinkney*, 284 Md. 694, 399 A.2d 877 (1979). This is known as the "required security." § 17–101.

Under Title 18, entitled "For–Rent Vehicles," the Motor Vehicle Administration may not register any motor vehicle to be rented until the owner certifies that it has provided security for the vehicle equivalent to that required in Title 17. The security required for For–Rent Vehicles covers the "owner of the vehicle and each person driving or using the vehicle with the permission of the owner or lessee," notwithstanding any provision of the rental agreement to the contrary. § 18–102.[3]

---

**1.** For the sake of clarity, we will hereinafter refer to all persons who operate rental vehicles with the permission of either the lessor or the lessee as "permittees." We will refer to all persons who operate rental vehicles with only the permission of the lessee given in violation of the rental agreement as "unauthorized permittees."

**2.** Unless otherwise indicated, all following statutory citations are to the Transportation Article of the Maryland Code (1977, 1992 Repl.Vol., 1995 Supp.).

**3.** Section 18–102. **Certification of security prerequisite to registration.**
(a) *In general.*—The Administration may not register any motor vehicle, trailer, or semitrailer to be rented until the owner of the

Section 18–106 establishes that if person rents a motor vehicle to another under a private agreement that the lessee shall not permit another person to drive the rented vehicle,[4] no other person may drive the rented vehicle without the consent of the lessor or its agent. In this case, we must decide what effect, if any, § 18–106 has on the operation of § 18–102(b).

Appellee Allstate sought a declaratory judgment in the Circuit Court for Anne Arundel County that, based on § 18–102, Enterprise is obligated to provide minimum security in the amount of $20,000 per person/$40,000 per occurrence for bodily injury arising out of an accident that occurred on August 11, 1991.[5] Allstate maintained that because the driver

---

vehicle certifies to the satisfaction of the Administration that he has security for the vehicle in the same form and providing for the same minimum benefits as the security required by Title 17 of this article for motor vehicles.

(b) *Persons to be covered by security.*—Notwithstanding any provision of the rental agreement to the contrary, the security required under this section shall cover the owner of the vehicle and each person driving or using the vehicle with the permission of the owner or lessee.

(c) *Suspension of registration.*—If the Administration finds that the vehicle owner has failed or is unable to maintain the required security, the Administration shall suspend the registration of the vehicle.

4. Section 18–106. **Unauthorized use of rented motor vehicle.**

(a) *Lessees permitting other persons to drive rented motor vehicles.*—If a person rents a motor a vehicle under an agreement not to permit another person to drive the vehicle the person may not permit any other person to drive the rented motor vehicle.

(b) *Rental agreements prohibiting other persons from driving vehicles.*—If a person rents a motor vehicle under an agreement not to permit another person to drive the vehicle no other person may drive the rented motor vehicle without the consent of the lessor or his agent.

5. Initially, Allstate also sought a declaratory judgment holding Travelers Insurance Companies (Travelers) responsible for the primary coverage resulting from this automobile accident on the theory that Enterprise maintained a policy of insurance with Travelers to provide liability coverage for those persons operating their rented vehicles with permission. Travelers, in a motion for summary judgment, denied providing insurance coverage for the lessees of cars owned by Enterprise. Al-

had the lessee's express permission to operate the rental vehicle, Enterprise had the primary responsibility for providing the required security to the extent of the statutory mandatory minimum.

The circuit court granted summary judgment in favor of Allstate, declaring

> Enterprise Leasing Company is governed by 18–102 and is required to provide coverage to Grace Suzanne Sonde and David Sonde in the case brought by Stephany Witt, C–93–1905, to the extent of $20,000.00 per person/$40,000. per occurrence.

The court entered final judgment in favor of Allstate. *See* Maryland Rule 2–602(b). Enterprise appealed to the Court of Special Appeals, and we granted a writ of certiorari on our own motion. We shall affirm the judgment of the circuit court.

## I.

Appellant Enterprise is a self-insured entity that is in the business of leasing automobiles to the public. Enterprise leased a Ford Taurus GL automobile to Grace Sonde on August 8, 1991. The rental agreement provided that it is a violation of the contract if the car is used or driven by any person under the age of 21 without the owner's written permission or by any person other than the renter without written consent of the owner. When Ms. Sonde signed the rental agreement, she specifically declined to request permission for a person other than herself to drive the vehicle.

On August 11, 1991, Ms. Sonde allowed her seventeen year-old son, David, to operate the Enterprise rental vehicle. David allegedly failed to maintain control of the vehicle and collided with a vehicle in which Stephany Witt was a passen-

---

though the trial court has never ruled on this motion, the motion was unopposed and it appears that all parties agree that Travelers did not provide insurance coverage for the lessees of automobiles owned by Enterprise and that the responsibility for providing the security falls upon Enterprise, as self-insurer.

ger. Stephany Witt filed suit against David Sonde and Grace Sonde in the Circuit Court for Anne Arundel County seeking compensation for injuries she suffered in the accident.[6]

Appellee Allstate is an insurance carrier. On the day of the accident, Allstate had in effect an insurance policy that provided liability coverage for both Grace and David Sonde. The Sondes submitted Ms. Witt's claim to Allstate. Allstate submitted the claim to Enterprise, claiming that Enterprise was required to provide primary insurance coverage for the Witt lawsuit, up to the statutory minimum coverage required by Maryland law.

Enterprise denied responsibility for primary coverage because, under the terms of the rental agreement and § 18–106, Grace Sonde was not authorized to permit David Sonde to drive the rental vehicle. Enterprise maintained that David Sonde was an unauthorized driver and, therefore, not a covered operator. Enterprise contended that § 18–106 defines permission as used in § 18–102 and that the security required by § 18–102 does not extend to persons operating the Enterprise vehicle with invalid and illegal permission in violation of § 18–106.

Allstate asserts that, under § 18–102(b), if the operator of a rental vehicle has permission to operate the vehicle, then the operator is covered for the damages to a third party under the lessor's required security. Allstate contends that, under the plain language of § 18–102(b), because David Sonde operated the rental vehicle with the express permission of the lessee, he had "permission" to operate the rental vehicle, notwithstanding the provisions of § 18–106. Therefore, because he had permission to operate the vehicle, he is covered under the Enterprise required security for the damages arising out of the Witt accident.

In this appeal, Enterprise and Allstate disagree as to whether § 18–106 defines "permission" as this term is used in

---

6. On April 13, 1994, the Circuit Court for Anne Arundel County stayed this lawsuit pending resolution of the present case.

§ 18–102(b). Enterprise contends that § 18–106 defines the term, while Allstate contends that § 18–106 does not.

## II.

■ The cardinal rule of statutory construction is to discern and carry out the intent of the legislature. *Dept. of Public Safety and Correctional Services v. Howard,* 339 Md. 357, 369, 663 A.2d 74, 79 (1995). If the "statutory language is plain and unambiguous, and expresses a definite meaning consonant with the statute's purpose, courts must not insert or delete words to make a statute express an intention different from its clear meaning." *Pennsylvania Nat'l Mut. v. Gartelman,* 288 Md. 151, 159, 416 A.2d 734, 738 (1980). Where the Legislature has mandated insurance coverage, this Court will not create exclusions that are not specifically set out in the statute. *Larimore v. American Ins. Co.,* 314 Md. 617, 622, 552 A.2d 889, 891 (1989); *Jennings v. Government Employees Ins.,* 302 Md. 352, 358–59, 488 A.2d 166, 169 (1985). Employing these principles of statutory construction, we address the issue before the Court.

We believe that the plain language of § 18–102(b) indicates that an unauthorized permittee cannot be excluded from coverage under the required security, even if the rental vehicle is operated without the lessor's consent and in violation of the rental agreement. We also believe that the Legislature did not intend for § 18–106 to have any effect on the coverage required by § 18–102(b). We base our conclusion on two phrases contained in § 18–102(b).

The first significant phrase is the initial phrase of § 18–102(b), which reads, "[n]otwithstanding any provision of the rental agreement to the contrary." This plain language indicates that no term or condition of a private rental agreement may interfere with the coverage required by § 18–102(b). The import of the initial phrase of § 18–102(b) for this case becomes clear when it is considered in relation to § 18–106 and the rental agreement between Ms. Sonde and Enterprise. The plain language of § 18–106 indicates that its application depends on the terms of rental agreement. Section 18–106

becomes operative only if a rental agreement contains a provision that either restricts the lessee from giving permission to others to operate the rental vehicle or prohibits a person other than the lessee from operating the rental vehicle without the lessor's permission. Section 18–106 does not define the term "permission".

In this case, the rental agreement states that it is a violation of the agreement for anyone other than Ms. Sonde or anyone who is under the age of 21 to operate the rental vehicle without Enterprise's written permission. Section 18–106 enforces this provision of the rental agreement, and, under § 27–101, a violation of § 18–106 is a misdemeanor. Nevertheless, for the purposes of applying § 18–102(b), we read the rental agreement as if it did not include this provision. Therefore, neither the rental agreement nor § 18–106 has any effect on the lessor's obligation under § 18–102(b) to provide the required security.

The second significant phrase in § 18–102(b) is the final phrase, which reads, "with the permission of the owner or lessee." We believe that by using the disjunctive language "owner or lessee," the Legislature intended to extend coverage under the required security to all permittees of both the lessee and the lessor. This includes unauthorized permittees.

Had the Legislature intended to exclude coverage for unauthorized permittees, we believe it would have used the conjunctive "and" rather than the disjunctive "or." The use of "and" as the connector between the terms "owner" and "lessee" would have indicated that the permission of both would be required for a permittee who operated the rental vehicle to be covered under the required security. But the use of "or" indicates that the permission of either the owner or lessee is sufficient to bring a permittee under the coverage of the required security.

We hold that § 18–102(b) requires the lessor to cover damages to third parties under its required security where any permittee, authorized or unauthorized, drives or uses a rental vehicle. Section 18–106 provides no exclusion from this

coverage for unauthorized permittees.[7] Enterprise could not "contract away its statutorily-imposed risk by inserting in its rental agreement restrictive clauses that narrow the statutory requirements." *Consol. Enters. Inc. v. Schwindt,* 172 Ariz. 35, 833 P.2d 706, 710 (1992). This is made clear by the plain language of the statute.

Our conclusion is further supported by the fact that the Maryland compulsory insurance law does not include a specific exclusion from coverage under the required security for unauthorized permittees. We think that if the General Assembly had intended to exclude coverage for unauthorized permittees, it would have made such an exclusion an explicit part of the law.

■ The purpose of Maryland's compulsory insurance law is to ensure that those who own and operate motor vehicles registered in the State are "financially able to pay compensation for damages resulting from motor vehicle accidents." *Gartelman,* 288 Md. at 154, 416 A.2d at 736; *see National Grange Mut. Ins. v. Pinkney,* 284 Md. 694, 704, 399 A.2d 877, 882 (1979). The public policy behind the law is to give innocent third parties a source of private sector insurance funds from which to obtain compensation for their injuries. *See Van Horn v. Atlantic Mutual,* 334 Md. 669, 680, 641 A.2d 195, 200 (1994); *Larimore,* 314 Md. at 625, 552 A.2d at 892; *Jennings,* 302 Md. at 357–58, 488 A.2d at 168–69; *see also American Tours, Inc. v. Liberty Mut. Ins. Co.,* 315 N.C. 341,

---

7. One commentator who examined the interplay between § 18–102 and § 18–106 and the history of each provision reached the same conclusion that we reach today. *See* A. Janquitto, *Maryland Motor Vehicle Insurance,* § 4.7, at 100–05 (1992). He concluded that a review of the history of § 18–106 reveals that the Legislature "did not intend for the section to be used by an insurer or an owner as a means of circumventing the indemnification obligation inherent in the financial responsibility provision." *Id.* at 105. Further, he concluded that the 1970 removal of the provision that criminalized a lessee's giving permission to another to operate a rental vehicle in violation of a rental agreement from the precursor to § 18–102 indicated that the "Legislature considered the requirement that the financial security extend to owners, lessees, and permissive users to be separate from the prohibition against allowing persons to use the rented vehicle without permission of the owner." *Id.*

338 S.E.2d 92 (1986) (holding "it is preferable to provide coverage for innocent motorists rather than to deny such coverage because of the violation").

Section 18–102(b) effectuates this public policy. It mandates coverage under the required security for "the owner of the vehicle and each person driving or using the vehicle with the permission of the owner or lessee." Its purpose is, in part, to protect "the public generally and its members injured by the negligent operation of the insured [motor vehicle] on a public highway." *Couch Cyclopedia of Insurance Law,* § 45:293, at 617–18 (2d ed. 1981). By extending coverage under the required security to the permittees of the lessee, § 18–102(b) ensures that the injured innocent victims of accidents involving these permittees will have a source of private insurance funds from which to obtain compensation.

In the past, we have invalidated insurance policy exclusion clauses that are inconsistent with the public policy of this State. *See Larimore,* 314 Md. at 622, 626, 552 A.2d at 891, 893 (holding "fellow employee" exclusion invalid as inconsistent with public policy); *Jennings,* 302 Md. at 356–60, 488 A.2d at 168–71 (holding "household" exclusion invalid because inconsistent with public policy); *Gartelman,* 288 Md. at 156–57, 161, 416 A.2d at 737, 739 (holding that exclusion from personal injury protection (PIP) coverage for "an insured who is injured while occupying an uninsured motor vehicle owned by a named insured" and exclusion from uninsured motorist (UM) coverage for "an insured who is injured while occupying an uninsured highway vehicle owned by an insured other than himself" were invalid because they conflicted with the compulsory insurance law). In *Larimore,* we considered the validity of a motor vehicle insurance policy exclusion for fellow employees. In reasoning equally applicable here, we observed that

> To uphold the fellow employee exclusion in motor vehicle insurance policies could result in a large class of claimants being without liability insurance coverage and in a large class of uninsured motorists.

*Id.* at 625, 552 A.2d at 892. Similarly, we find that an exclusion for unauthorized permittees could result in a large class of injured claimants for whom insurance coverage would be unavailable.

For example, it is foreseeable that unauthorized permittees will drive rental vehicles and that they will be involved in accidents. *See Motor Vehicle Accident Indem. Corp. v. Continental Nat'l Am. Group Co.,* 35 N.Y.2d 260, 360 N.Y.S.2d 859, 319 N.E.2d 182, 184 (1974) (noting that the lessor, knew or should have known, that "the probabilities of the car coming into the hands of another person were exceedingly great"). It is in the nature of rental vehicles that they are often rented by temporary visitors to Maryland, such as business persons and vacationers. The parking or garaging of these rental vehicles often requires the lessee to give a hotel, restaurant, or other valet permission to operate the vehicle. The Supreme Court of Florida, in *Roth v. Old Republic Ins. Co.,* 269 So.2d 3, 6 (Fla.1972), recognized the probability that persons other than the lessee would operate a rental vehicle. The court noted:

> [I]n the very nature of modern automobile use a lessee of a rental car often has to turn the car over to car park, garage, or filling station personnel and others for temporary operation and that it would be unreasonable to negate the rental car agency's liability and its insurance coverage in case of accident because of the existence of a collateral or side agreement....

If these unauthorized permittees are not motor vehicle owners they do not need to maintain liability insurance. *See* Title 16 of the Transportation Article. If they are not covered by the required security, accidents in which they are involved could result in injured claimants who would have no recourse to compensation from a private insurance fund. *See Larimore,* 314 Md. at 625, 552 A.2d at 892; *Jennings,* 302 Md. at 360, 488 A.2d at 170. Moreover, as we have indicated, the purpose of the compulsory insurance law "would be frustrated to a significant extent" if we were to allow an exclusion from the required security that is not specifically provided by statute. *See Jennings,* 302 Md. at 360, 488 A.2d at 170.

**552** 

██ Neither § 18–106 nor any other statutory provision authorizes a lessor to exclude an unauthorized permittee from the coverage required by § 18–102(b). It is the General Assembly's role to determine whether unauthorized permittees are to be excluded from coverage under § 18–102(b). We will not read an exclusion into the statute. Accordingly, we affirm the judgment of the circuit court.

*JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.*